SEYFARTH SHAW LLP
Andrew M. Paley (SBN 149699)
apaley@seyfarth.com
Joshua A. Rodine (SBN 237774)
jrodine@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile:   (310) 201-5219

SEYFARTH SHAW LLP
Galen P. Sallomi (SBN 306743)
gsallomi@seyfarth.com
560 Mission St. Suite 3100
San Francisco, California 94105-2930
Telephone:  (415) 397-2823
Facsimile:   (415) 397-8549

Attorneys for Defendant
OHLA USA, Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB GILCHRIST, an individual, on behalf of himself and on behalf of all persons similarly situated,<br><br>              Plaintiff,<br><br>     v.<br><br>OHLA USA, Inc., a Corporation; and DOES 1 through 50, inclusive,<br><br>              Defendants. | Case No.  **'24CV0871 WQHMSB**<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION TO THE UNITED STATES DISTRICT COURT**<br>*[Concurrently filed with Civil Case Cover Sheet; Declarations of Galen P. Sallomi and Alison Knowles in Support Thereof; Defendant's Corporate Disclosure Statement; Defendant's Certificate of Interested Parties; and Proof of Service]*<br><br>San Diego County Superior Court Case No. 37-2024-00014127-CU-OE-CTL<br><br>Action Filed:      March 26, 2024<br>Complaint Served: April 16, 2024 |

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. sections 1332, 1441, and 1446, defendant OHLA USA, Inc. ("Defendant") hereby removes the above-captioned action from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California. This Court has original federal jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. section 1332(d)(2), and under 28 U.S.C. section 1331 (federal question), and removal jurisdiction under 28 U.S.C. sections 1332(c), 1332(d)(2), 1441(a), 1446 and 1453. Removal is proper for the reasons set forth below.

**I.    BACKGROUND**

1.    On March 26, 2024, Plaintiff Jacob Gilchrist ("Plaintiff") filed an unverified putative Class Action Complaint in the Superior Court of the State of California for the County of San Diego, entitled "*Jacob Gilchrist, on behalf of herself and all others similarly situated, Plaintiffs, v. OHLA USA, Inc., a Corporation; and DOES 1 through 50, inclusive, Defendants,*" and designated Case No. 37-2024-00014127-CU-OE-CTL ("Complaint").

2.    On April 16, 2024, Defendant's registered agent for service of process received, via process server, a packet containing the Summons; Complaint; Civil Case Cover Sheet; ADR Packet; and Notice of Case Assignment and Case Management Order. A true and correct copy of the service packet served on Defendant is attached hereto as **Exhibit D**.[1] (Declaration of Galen P. Sallomi ("Sallomi Dec."), ¶ 2.)

3.    On May 16, 2024, Defendant filed its Answer to Plaintiff's Complaint in San Diego Superior Court. A true and correct copy of Defendant's Answer is attached hereto as **Exhibit E**. (Sallomi Dec., ¶ 3.)

---

[1] Exhibits A–C are included in the declaration of Alison Knowles, filed concurrently herewith.

4.      Defendant has not filed or received any other pleadings or papers, other than the pleadings described as Exhibits D and E in this action, prior to filing this Notice of Removal. (Sallomi Dec., ¶ 4.)

## II.      TIMELINESS OF REMOVAL

5.      Notice of removal is timely if it is filed within 30 days after the service of the complaint or summons . . . The notice of removal . . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant . . . ." 28 U.S.C. §1446(b)(1).

6.      The service of process which triggers the 30-day period to remove is governed by state law. *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

7.      Here, Defendant's Notice of Removal is timely because it is filed on May 16, 2024, which is within 30 days of service of the Summons and Complaint on April 16, 2024. 28 U.S.C. § 1446(b); Cal. Code Civ. Proc. § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery."); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) ("we hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint . . . .").

## III.     CLASS ACTION FAIRNESS ACT REMOVAL

8.      This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. section 1332(d)(2). As set forth below, this action is removable, pursuant to 28 U.S.C. section 1441(a), because this Court has original jurisdiction over the action, as the aggregate amount in controversy exceeds $5 million

exclusive of interest and costs, and the action is a class action in which at least one class member is a citizen of a state different from that of Defendant. 28 U.S.C. §§ 1332(d)(2) & (d)(6). Furthermore, the number of putative class members is greater than 100. 28 U.S.C. § 1332(d)(5)(B); Declaration of Alison Knowles ("Knowles Dec."), ¶ 5.)

### A.     Plaintiff And Defendant Are Minimally Diverse

9.     CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one class member must be a citizen of a state different from any named defendant. See 28 U.S.C. § 1332(d)(2)(A). Here, such minimal diversity exists: Plaintiff is a citizen of a state (California) that is different from the state of citizenship of Defendant (which is a citizen of Delaware).

### 1.     Plaintiff Is A Citizen Of California

10.     For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state"). Residence is prima facie evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes"). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

11.     Here, Plaintiff alleges he "has been employed by DEFENDANT in California since September 2023 . . ." (Ex. A, Compl. ¶ 3.) OHLA's records show that Plaintiff was actively working for OHLA from approximately September 25, 2023 to February 14, 2024. (Knowles Dec., ¶ 4.) Plaintiff seeks to represent two classes of

employees who are both defined by the fact that they were employed "in California." (Ex. A, Compl. ¶¶ 4, 32, 45.) The only difference is that the sub-class is limited to people who were employed by Defendant in the prior three years.

12.     Moreover, Defendant's employee records show that when Plaintiff applied for employment with Defendant, he listed a California address on his job application. (Knowles Dec., ¶ 4.) Throughout Plaintiff's four-month employment with Defendant, he maintained a California address on file for purposes of his personnel file, payroll checks, state payroll, and tax withholdings. (Knowles Dec., ¶ 4.) Plaintiff's last known address is in California. (Knowles Dec., ¶ 4.)

13.     The fact that Plaintiff's domicile is in California and that his intent is to remain domiciled in California is further evident from the fact that he brought this lawsuit in San Diego Superior Court. Therefore, Plaintiff has been at all relevant times a citizen and resident of the State of California.

### 2.     Defendant Is A Citizen Of Delaware, Not California

14.     Defendant is and was at the time of the filing of this action, a citizen of a state other than California within 28 U.S.C. section 1332(c)(1). For purposes of diversity jurisdiction, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

15.     The U.S. Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010). Under the nerve center test, the "principal place of business" means the corporate headquarters where a corporation's high-level officers direct, control and coordinate its activities on a day-to-day basis. *Id.* ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities").

16.    Defendant is, and ever since this action was commenced has been, incorporated under the laws of the State of Delaware. (Knowles Dec., ¶ 3.) Defendant's corporate headquarters and executive offices are all on the east coast, which is where its high level officers direct, control, and coordinate Defendant's activities. (Knowles Dec., ¶ 3.) Accordingly, Defendant is a citizen of Delaware for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1).

17.    Because Plaintiff is a citizen of California and Defendant is a citizen of Delaware, minimal diversity exists for purposes of CAFA.

18.    **Doe Defendants.** Pursuant to 28 U.S.C. section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant"). Indeed, the presence of Doe defendants in this case has no bearing on diversity of citizenship for removal. Thus, the existence of "DOES 1 to 50" in the Complaint does not deprive this Court of jurisdiction. *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal).

B.    **The Amount In Controversy Exceeds The Statutory Minimum**

19.    CAFA requires that the amount in controversy exceed $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5 million. 28 U.S.C. § 1332(d)(6). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep.

No. 109-14, at 42 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 40. The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 42-43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

20.    Defendant specifically denies liability as to all of Plaintiff's claims, and specifically denies the appropriateness of the case proceeding as a class action, but Defendant has a reasonable, good faith belief that the amount in controversy, as alleged and pled by Plaintiff, exceeds $5,000,000. All calculations in support of the amount in controversy analysis are based on the allegations in Plaintiff's Complaint (along with other information as identified herein), assuming the truth of those allegations without any admission, and such calculations are not intended as an admission that any of Plaintiff's allegations have merit.

21.    **Preponderance Of The Evidence Standard.** Plaintiff's Complaint does not allege the specific amount in controversy for the class he seeks to represent. When a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum. In *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013), the Ninth Circuit held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard.

22.    In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount

demanded . . . removal of the action is proper on the basis of an amount in controversy asserted . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." Pub. L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *accord Abrego*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy … we therefore apply the preponderance of the evidence burden of proof to the removing defendant"). The defendant must show that it is "more likely than not" that the jurisdictional threshold is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional minimum]. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

23.    To satisfy this standard, the "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases. First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite ... amount'").

24.     The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

25.     It is well-settled that "the court must accept as true plaintiff's allegations as pled in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

26.     As the Ninth Circuit has explained, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez*, 372 F.3d at 1117; *see also Rodriguez*, 728 F.3d at 981 (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino*, 506 F.3d at 702 (holding that even if a plaintiff affirmatively pleads damages less than the jurisdictional minimum and does not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

27.     If a plaintiff asserts statutory violations, the Court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought. She did not.

8

*Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations … Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform … policies were applied to all putative class members reasonable") (emphasis added); *Soratorio v. Tesoro Ref. and Mktg. Co.*, LLC, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom.* 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

28.    Numerous other district courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the

plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (when complaint alleged "[the defendant] engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Soratorio, LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

29.    Here, the Complaint asserts nine causes of action for: (1) "Unfair Competition"; (2) "Failure to Pay Minimum Wages"; (3) "Failure to Pay Overtime Wages"; (4) "Failure to Provide Meal Periods"; (5) "Failure to Provide Rest Periods"; (6) "Failure to Provide Accurate Itemized Wage Statements"; (7) "Failure To Reimburse Expenses"; (8) "Failure to Pay Sick Wages"; and (9) "Failure to Comply With California Quota Laws".

30.    Plaintiff defines the proposed class to include "all individuals who are or previously were employed by DEFENDANT in California, including any employees staffed with DEFENDANT by a third party, classified as non-exempt employees at any time during the period beginning four (4) years prior to the filing of this Complaint and

ending on the date as determined by the Court." (Ex. A, Compl. ¶ 35.)

31.    Here, the alleged amount in controversy exceeds $5 million in the aggregate. Plaintiff proposes a class period of "beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court." (Ex. A, Compl. ¶ 35.) Given that Plaintiff's Complaint was filed on March 26, 2024, the relevant time period for purposes of calculation in this Notice of Removal is March 26, 2020, until the present (the "Amount In Controversy Period").

32.    During the Amount In Controversy Period, Defendant employed at least 1,431 non-exempt hourly employees in California, and their average hourly rate of pay was $42.88. (Knowles Dec., ¶¶ 5, 7.)

33.    As set forth below, the amount in controversy implicated by Plaintiff's class-wide allegations exceeds $5 million. ***All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission, the truth of the facts alleged and assuming solely for purposes of this Notice of Removal that liability is established.***

34.    The calculations below show that the alleged amount in controversy exceeds $5,000,000, when considering non-exempt employees, such as Plaintiff, and when considering the causes of action alleged in the Complaint.

### 1.    Unpaid Overtime and Minimum Wages Claims Arising From Uncompensated Hours Worked

35.    Plaintiff alleges that he and the Class were not compensated for all hours worked. Specifically, Plaintiff alleges that Defendant "required these employees to submit to mandatory temperature checks and symptom questionnaires for COVID-19 screening prior to clocking into Defendant's timekeeping system." (Ex. A, Compl. at ¶ 8.) Plaintiff also alleges that he and the Class were required to work during their meal breaks. (*Id.* at ¶ 97.) Finally, Plaintiff generally alleges that Defendant "implement[ed] a policy and practice that failed to accurately record overtime worked" and that he and the

1    Class were "required, permitted or suffered by Defendant to work for Defendant and

2    were not paid for all the time they worked, including overtime work." (*Id.* at ¶¶ 86, 87.)

3        36.    Although Defendant denies Plaintiff's allegations or that he or any Class

4    Members are entitled to any relief, it is reasonable to assume from Plaintiff's allegations

5    that employees worked a minimum of one hour of overtime per week. During the

6    relevant time period identified in the Complaint, Defendant employed approximately

7    1,431 non-exempt employees in California. (Knowles Dec., ¶ 5.) The average hourly rate

8    of pay for these employees during the relevant period is $42.88 per hour. (Knowles Dec.,

9    ¶ 7.) Given the dates of service of the putative class members, these employees worked

10    approximately 76,789 workweeks between March 26, 2020, to May 8, 2024. (Knowles

11    Dec., ¶ 6.) During the relevant period, the standard workday for Defendant's California

12    non-exempt employees is and has been eight (8) hours, and the standard work week for

13    Defendant's California non-exempt employees is and has been five (5) days. (Knowles

14    Dec., Ex. A–C.) Assuming that Plaintiff alleges a very conservative one hour of unpaid

15    overtime per work week, the amount of alleged unpaid overtime Plaintiff seeks on behalf

16    of the putative class is roughly **$4,939,068** (i.e., $42.88/hour X 1.5 X 1 hours X 76,789

17    workweeks = $4,939,068).

18        37.    This is a very conservative estimate because Plaintiff also alleges that he and

19    the class worked more than twelve hours per day, which would entitle them to an

20    overtime rate of pay equal to twice the regular rate, as opposed to one and a half times the

21    regular rate of pay.

22        38.    Consistent with numerous decisions, an estimate of 1 hour per week per

23    Class Member is appropriate in light of Plaintiff's allegation that Defendant had a

24    "consistent policy" of failing to pay employees for overtime wages. *See, e.g., Molina v.*

25    *Pacer Cartage, Inc.*, 47 F. Supp. 3d 1061, 1066 (S.D. Cal. 2014) (amount in controversy

26    satisfied when "a conservative estimate would be that the class members worked three

27    hours overtime per week"); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846,

28    at *4 (S.D. Cal. Nov. 1, 2019) ("two hours of unpaid overtime per week is reasonable"

based on allegations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assumes that each of the class members worked two hours of overtime each week during the class period"); *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) ("Defendant's assumptions that each class member worked 2.5 hours of overtime per week" is "conservative").

39.    Thus, conservatively assuming that the class members worked 1 hour per week of overtime, the potential unpaid wages total **$4,939,068** (i.e., $42.88/hour X 1.5 X 1 hours X 76,789 workweeks = $4,939,068).

### 2.    Unpaid Overtime and Sick Wages Claims Arising From Regular Rate Calculations

40.    Plaintiff alleges that the rate of pay for Plaintiff and the Class Members was not correct because Defendant allegedly had a "non-discretionary incentive program that paid Plaintiff and other California class members incentive wages based on their performance" which was not included "when calculating the regular rate of pay in order to pay overtime." (*Id.* at ¶10.) Plaintiff further contends that, "as a matter of policy and practice, Defendant routinely underpays sick pay wages" because "Defendant pays sick pay wages to Plaintiff and the [class] at the incorrect rate of pay" specifically because Defendant pays sick wages "at the base hourly pay, as opposed to the regular rate of pay" . . . .," in violation of Labor Code § 246. (Ex. A, Compl. ¶¶ 114, 116.)

41.    Plaintiff's Complaint does not contain any allegations about the amount of wages that he or the Class are purportedly entitled to. Rather than make assumptions about the calculations Plaintiff is alleging, Defendant will make the estimate in this removal even more conservative by not including this theory of recovery in the calculations.

### 3.    Meal and Rest Period Claims

42.    Plaintiff's fourth cause of action seeks class-wide recovery on the grounds that employees were allegedly denied compliant meal periods because "Defendant

requires [sic] Plaintiff to work while clocked out during what is supposed to be Plaintiff's off-duty meal break." (Ex. A, Compl. ¶ 8.) Plaintiff further alleges that he was required "to perform work as ordered by Defendant for more than five (5) hours . . . without receiving a meal break." (Ex. A, Compl. ¶ 11.) Plaintiff also alleges he and other employees were denied second meal periods after working a ten hour shift. *Id.*

43.    Plaintiff's fifth cause of action seeks class-wide recovery for noncompliant rest breaks because Defendant allegedly required Plaintiff "to work in excess of four (4) hours without being provided ten (10) minute rest periods." (Ex. A, Compl. ¶ 12.) Plaintiff further alleges that Plaintiff and Class Members did not receive their second or third rest periods. (*Id.*)

44.    Under California Labor Code section 226.7, employers must pay an extra hour's pay to employees who are not provided full or timely meal or rest periods. Case law makes clear that an employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

45.    The statute of limitations for recovery for meal or rest period premium pay under California Labor Code section 226.7 pay is three years. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). However, Plaintiff alleges a claim for meal break premiums pay as part of his unfair competition claim under Business and Professions Code section 17200, *et seq.* (Ex. A, Compl., ¶ 138.) Although Defendant contends that meal and rest break premium pay cannot be recovered under Business and Professions Code section 17200 (*Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010)), according to the allegations of Plaintiff's Complaint, the four-year statute of limitations applies for purposes of removal. Cal. Bus. & Prof. Code § 17208. Thus, for determining the amount

1  in controversy, the four-year statute of limitations applies to Plaintiff's meal and rest
2  period claims.

3       46.    Plaintiff alleges that meal and rest periods were not compliant because they
4  were short, on-duty, late, interrupted, or missed. Given the Complaint's allegations, it can
5  be conservatively estimated that there was at least a 40 percent violation rate for the
6  purposes of calculating the amount in controversy of Plaintiff's meal period and rest
7  break claims. Plaintiff does not limit the number of violations alleged in his Complaint.
8  Indeed, district courts have consistently upheld comparable and even higher assumptions
9  of meal period and rest break violations as plausible for determining the amount in
10  controversy, where the Complaint does not limit the amount of violations alleged in the
11  Complaint. *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019)
12  (finding an estimate of five meal period and three rest break violations per week
13  reasonable where Plaintiff alleged a "a policy and practice" of meal and rest break
14  violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018)
15  ("Defendant conservatively assumed the putative class members were not provided …
16  three of ten rest periods they were entitled to receive each work week, even though
17  assumption of a 100 percent violation rate may have been reasonable based on allegations
18  in the Complaint. The Court therefore we (*sic*) finds Defendant's assumed violation rates
19  reasonable"); *Agredano v. Sw. Water Co.*, 2017 WL 2985395, at *6 (C.D. Cal. May 30,
20  2017) ("Plaintiff further alleges that Defendants 'routinely' and 'consistently' failed to
21  provide him and the putative class members with the required 30–minute lunch break
22  periods. Plaintiff does not limit the number of violations alleged in his Complaint, nor has
23  he offered any evidence that he or other putative class members missed fewer than five
24  legally required meal breaks per week. Thus, the Court finds that 'Plaintiff's own
25  complaint alleges universal violations of meal ... period laws' such that Defendants' 'use
26  of a 100% violation rate [five missed meal periods] is proper.'"); *Mejia v. DHL Express
27  (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding an estimate of
28  five missed rest periods a week reasonable where plaintiff alleged that defendant

maintained "policies, practices and procedures that caused the purported violations. . .");
*Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at \*2 (C.D. Cal. May 14, 2015) (finding defendant's estimate of five meal period and five rest period violations was reasonable); *Coleman*, 730 F. Supp. 2d at 1150 ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate," i.e., 5 missed meal periods and five missed rest breaks per week). *Accord Arias*, 936 F.3d at 926 (holding that "Marriott's assumptions are plausible" where it assumed "one missed rest break" as the "lowest assumed violation rate").

47.    This assumption is conservative, as it discounts potential liability that would be incurred if employees were not provided with compliant second meal periods, which Plaintiff alleged occurred.

48.    As stated above, Defendant employed at least 1,431 non-exempt employees in California during the Amount In Controversy Time Period. (Knowles Dec., ¶ 5.) These employees worked at least 76,789 work weeks and earned an average hourly wage of $42.88. (Knowles Dec., ¶¶ 6, 7.)

49.    Although Defendant denies that Plaintiff or any Class Member has not been paid any required meal period or rest break premium pay, assuming at least **four meal or rest period violations per week** (out of a possible ten violations) for each Class Member, the amount in controversy for Plaintiff's meal period and rest break claims would be **$ 13,170,849** [$42.88 amount of premium pay x 4 violations x 76,789 workweeks = **$13,170,849**].

### 4.    Wage Statement Penalties

50.    Plaintiff's sixth cause of action alleges that Defendant did not provide complete and accurate wage statements to Plaintiff and other Class Members. (Ex. A, Compl. ¶¶ 104–107.) Defendant allegedly "failed to provide Plaintiff and the other members of the California labor sub-class with complete and accurate wage statements which failed to show, among other things, the correct gross and net wages earned." (Ex.

A, Compl. ¶ 106.) Plaintiff also alleges that the wage statements failed to "reflect all applicable hourly rates during the pay period." (*Id.*) Plaintiff also alleges that "the wage statements failed to identify the accurate total hours worked each pay period." (*Id.*)

51.    Based on Plaintiff's class-wide allegation that every wage statement issued to Plaintiff and the other class members violated Labor Code Section 226(a), Plaintiff seeks wage statement penalties up to a maximum of $4,000 per employee. Under Labor Code Section 226(e), the alleged statutory penalties sought by Plaintiff are $50 for the initial pay period and $100 for each subsequent pay period "not to exceed an aggregate penalty of four thousand dollars" per employee. Cal. Lab. Code § 226(e); Compl. at ¶ 107.

52.    The statute of limitations on a wage statement claim is one year. Cal. Lab. Code § 226; Cal. Civ. Proc. § 340. Between March 26, 2023, and the present, approximately 664 non-exempt employees worked approximately 16,378 pay periods for Defendant. Based on the 16,378 pay periods, these employees worked approximately 664 initial pay periods, and 15,714 subsequent pay periods, for a total of **$1,604,600** in alleged wage statement penalties ((664 X $50) + (15,714 X $100) = $1,604,600).

### 5.    Failure to Timely Pay Wages After Termination

53.    Plaintiff's prayer for relief seeks a penalty under Labor Code Section 203 in the amount equal to "the wages of all terminated employees in the [class] as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced, in accordance with Cal. Lab. Code § 203". (Ex. A, Compl. at prayer for relief ¶ 2 G.) This request is certainly a novel interpretation of California law, as Cal. Lab. Code § 203 only provides for a penalty equal to the employee's daily wage for each day the final paycheck goes unpaid, up to a maximum penalty of 30 days.

54.    It is reasonable to assume that Plaintiff is alleging each employee who was terminated is entitled to a penalty equal to 30 days of the employee's daily wage. *See Tajonar v. Echosphere, LLC*, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the

maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations").

55.     During the relevant three-year statutory period, approximately 810 non-exempt employees have quit or been terminated from Defendant's employ in California and their average hourly rate as of the time of their termination was $43.05 per hour. (Knowles Dec., ¶ 8.) The standard workday for Defendant's non-exempt employees in California is and has been eight hours. (Knowles Dec., Ex. A–C.) Applying the average hourly rate of $43.05 and accepting Plaintiff's contention that each terminated employee is entitled to 30 days of pay in penalties under Labor Code section 203, the amount in controversy for the waiting time penalties is **$8,368,920** ($43.05/hour X 8 hrs. X 30 days X 810 employees = $8,368,920).

### 6.     Reimbursement Claims

56.     Plaintiff's seventh cause of action alleges that Defendant has violated California Labor Code section 2802 by "failing to indemnify and reimburse Plaintiff and the [class] for required expenses . . . which included, but were not limited to, costs relating to using their personal cellular phones . . . and home offices." (Ex. A, Compl., ¶¶ 108–111.) The copy-and-paste nature of the complaint is notable, as Plaintiff, a construction worker, alleges that he was required to use his home office in connection with his work.

57.     Under California Labor Code section 2802, an employer must indemnify employees for "necessary expenses and losses incurred" while discharging their duties. Cal. Lab. Code § 2802(a). "The term 'necessary expenditures or losses' shall include all reasonable costs, including but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section." Cal. Lab. Code § 2802(c). A reimbursement claim is subject to a three-year statute of limitations. *Brandon v. Nat'l R.R. Passenger Corp. Amtrak*, 2013 WL 800265, at *2 (C.D. Cal. Mar. 1, 2013) ("The statute of

limitations under California Labor Code § 2802 is also three years"). Between March 26, 2021 and May 8, 2024, Defendant's employees worked approximately 46,091 weeks. (*See* Knowles Dec., ¶¶ 5, 6.) Although Defendant denies that Plaintiff or any Class Member are entitled to reimbursements that have not been paid, or that Defendant failed to reimburse them for cell phones or home offices, it is reasonable to assume that Plaintiff is alleging unreimbursed expenses of at least $50 per month per employee. Conservatively assuming that Class Members were not reimbursed $50 per month, the potential unpaid reimbursement totals **$576,137** [(46,091 weeks / 4) x $50 = $576,137].[2]

### 7. Attorneys' Fees

58.     Plaintiff also seeks attorneys' fees. (Ex. A, Compl., Prayer for Relief.) Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.")

59.     A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy. *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the

---

[2] /     District courts have found similar calculations to be reasonable based on plaintiffs' allegations that defendants failed to reimburse necessary business expenses, including cell phone expenses. *See, e.g., Vallejo v. Sterigenics U.S., LLC*, No. 320CV01788AJBAHG, 2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) ("Defendant assumed that each employee incurred cell phone expenses of $25 per month … This amount is not unreasonable and is supported by a preponderance of the evidence"); *Moreno v. Beacon Roofing Supply, Inc.*, No. 19CV185-GPC(LL), 2020 WL 1139672, at *6 (S.D. Cal. Mar. 9, 2020) ("According to the CTIA, which collects wireless industry data, the average cell phone bill is $41.50 per month."); *Castro v. ABM Industries, Inc.*, 2017 WL 4682816 (N.D. Cal. Oct. 19, 2017) (denying plaintiff's motion for remand and accepting the employer's estimate of $27.14 as the monthly cost of a cell phone during the class period.)

DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION TO THE UNITED STATES DISTRICT COURT

amount in controversy under CAFA.") (citing *Brady*, 243 F. Supp. 2d at 1010-11); *Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy).

60.    The Ninth Circuit recently held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious.").

61.    Indeed, the Ninth Circuit again more recently explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

62.    In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See, e.g., Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery

DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION TO THE UNITED STATES DISTRICT COURT

approach"); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *28-29 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).

63.      Even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of **$7,164,893** in this case [$28,659,574 total amount in controversy x 0.25].

## C.    Removal Under CAFA Is Appropriate

64.      Although Defendant denies Plaintiff's allegations that he or Class Members are entitled to any relief for the above-mentioned claims, based on the foregoing calculations, the aggregate amount in controversy for the class for all asserted claims, exclusive of attorneys' fees, is approximately **$28,659,574** calculated as follows:

| | |
|---|---|
| **$4,939,068** | Unpaid Overtime Claim |
| **$13,170,849** | Meal and Rest Period Claims |
| **$1,604,600** | Wage Statement Penalties |
| **$8,368,920** | Waiting Time Penalties |
| **$576,137** | Reimbursement Claim |

65.      Although Defendant denies Plaintiff's allegations that he or Class Members are entitled to any relief, based on Plaintiff's allegations and Prayer for Relief, and a conservative estimate based on those allegations, the total amount in controversy is **$35,824,468**, including attorneys' fees. This total amount in controversy well exceeds the $5 million threshold set forth under 28 U.S.C. section 1332(d)(2) for removal jurisdiction.

66.    Accordingly, because diversity of citizenship exists and the amount in controversy exceeds $5 million, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2). This action is therefore subject to removal to this Court pursuant to 28 U.S.C. section 1441(a).

67.    To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

## IV.    FEDERAL QUESTION REMOVAL BASED ON LABOR MANAGEMENT RELATIONS ACT ("LMRA") SECTION 301 PREEMPTION

68.    Removal is proper where the federal courts have original jurisdiction over an action brought in state court. 28 U.S.C. § 1441(a). Federal question jurisdiction arises out of the fact that Plaintiff's claims are preempted by Section 301 of the Labor Management Relations Act ("Section 301"), 29 U.S.C. § 185. Pursuant to Section 301, "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties without regard to the amount in controversy or without regard to the citizenship of the parties." *Firestone v. Southern California Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000), reh'g denied 281 F.3d 801 (9th Cir. 2002). A collective bargaining agreement ("CBA") is such a contract, and Section 301 preempts all state-law claims "founded directly on rights created by collective-bargaining agreements." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987). Section 301 also "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957).

69.    The Ninth Circuit has developed a two-step inquiry to determine whether the LMRA preempts a state law claim. *See Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 920 (9th Cir. 2018) ("This circuit, however, has distilled the Supreme Court's RLA and LMRA § 301 case law into a two-part inquiry into the nature of a plaintiff's claim."),

DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION TO THE UNITED STATES DISTRICT COURT

cert. denied, 139 S. Ct. 1445 (2019). First, the court evaluates the "legal character" of the claim by asking "whether a particular right is grounded in a CBA" and "whether [the claim] seeks purely to vindicate a right or duty created by the CBA itself." *Id.* at 921 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). If it does, the claim is preempted. If not, the court then asks "whether litigating the state law claim nonetheless requires interpretation of a CBA." *Id.* at 921.

70.    In other words, the Court must first ask "whether the asserted cause of action involves a 'right [that] exists solely as a result of the CBA.'" *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (quoting *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016)). Under this test, a claim is preempted if it seeks "purely to vindicate a right or duty created by the CBA itself." *Schurke*, 898 F.3d at 921. The Court must proceed to the second step only if the claim seeks to vindicate a right not created by the CBA. *Curtis*, 913 F.3d at 1153 (explaining if "the claim seek[s] 'to vindicate a right or duty created by the CBA itself … 'then the claim is preempted and [the] analysis ends there'") (internal citations omitted).

71.    Plaintiff did not specifically reference or invoke the terms of the CBA in his Complaint. That is irrelevant. Under the artful pleading doctrine, a plaintiff may not avoid federal jurisdiction simply by pleading as a state law claim one that can only be made under federal law. *See Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1472 (9th Cir. 1984), overruled on other grounds by *Allis-Chalmers*, 471 U.S. at 220 ("[E]mployees frequently attempt to avoid federal law by basing their complaint on state law, disclaiming any reliance on the provision of the collective bargaining agreement . . . In such cases the 'artful pleading' doctrine requires that the state law complaint be recharacterized as one arising under the collective bargaining agreement. The case may then be removed to federal court and adjudicated under the appropriate federal law."); *Newberry v. Pacific Racing Association*, 854 F.2d 1142, 1146 (9th Cir. 1988) ("[T]he key to determining the scope of section 301 preemption is not based on how the complaint is framed, but whether the claims can be resolved only by referring to the terms of the

bargaining agreement."); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) ("The district court . . . properly looked beyond the face of the complaint to determine whether the contract claim was in fact a section 301 claim for breach of a collective bargaining agreement 'artfully pleaded' to avoid federal jurisdiction.").

### A.    The District Court Has Federal Question Jurisdiction Over Plaintiff's Claims

72.    Plaintiff seeks to certify a class and a sub-class of employees, both of which are defined by the fact that they were employed "in California." (Ex. A, Compl. ¶¶ 4, 32, 45.) The only difference is that the sub-class is limited to people who were employed by Defendant in the prior three years. (*Id.*) Plaintiff's proposed class includes hundreds of employees who are subject to at least one of three CBAs. True and correct copies of each CBA are attached to the Declaration of Alison Knowles in support of this Notice of Removal.

73.    Plaintiff's own employment was governed by a CBA. He was hired through the union hall to work on a short-term job-site in San Diego. Further, the Ninth Circuit has rightfully determined that the analysis focuses on the relationship between the claims, the Class as a whole and the CBA—not on the Plaintiff's employment status". *See e.g., Melanson v. United Air Lines, Inc.*, 931 F.2d 558, 561 (9th Cir. 1991) ("It is the relationship of the claim to the CBA, regardless of the plaintiff's employment status, that guides the preemption analysis."); *Sarmiento v. Sealy, Inc.*, 2019 WL 3059932, at *8-9 (N.D. Cal. July 12, 2019) (finding that Section 301 preemption applies on "a CBA-by-CBA basis, rather than employee-by-employee basis").

74.    Here, as discussed above, Plaintiff's Complaint is based on allegations: 1) that he and the Class were not paid at the correct rate; 2) that he and the Class were entitled to more meal breaks and rest periods than they received; 3) that he and the Class were not compensated for work they performed; and 4) that he and the Class were entitled to reimbursement for use of their cellular phone and home office. Based on these allegations, Plaintiff asserts other derivative theories of liability (e.g., failure to provide

DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION TO THE UNITED STATES DISTRICT COURT

accurate wage statements in violation of California Labor Code § 226, failure to timely pay wages upon termination in violation of California Labor Code § 203, and failure to pay meal and rest break premiums at the regular rate of pay in violation of California Labor Code § 226.7).

75.    Plaintiff's claims under California Labor Code §§ 204, 510, and 512 implicate collective bargaining agreement considerations, as well as CBA exemptions under the California Labor Code. For example, California Labor Code § 510 "do[es] not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." *See* Cal. Lab. Code § 514. Similarly, under California Labor Code § 204(c), "when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees," rather than the other provisions of Labor Code § 204.

### 1.    Plaintiff's Third Claim for Overtime Wages—Which Alleges Violations of California Labor Code § 510—Creates Federal Question Jurisdiction

76.    Plaintiff's theory of liability under California Labor Code § 510 renders the Complaint preempted under Section 301 and creates federal question jurisdiction.

77.    The recent decision of the Ninth Circuit in *Curtis*, 913 F.3d at 1152 is directly on point. In *Curtis*, the Ninth Circuit held that an employee's claim for overtime pay under § 510 of the California Labor Code existed "solely as a result of the CBA" because the relevant statute governing overtime claims permitted "unionized employees to contract around [the statute's requirements]." *Curtis*, 913 F.3d at 1154–1155. Specifically, § 510(a) states that its requirements "do not apply to the payment of overtime compensation to an employee working pursuant to ... [a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement" that complies with

certain requirements. *Id.* at 1153 (quoting Cal. Lab. Code § 510). The Ninth Circuit therefore held that if employers were required to comply with the default rule regarding overtime compensation despite the existence of a qualifying CBA that created alternative arrangements, the statutory language above would be rendered superfluous. *Id.* at 1154. The plaintiff's right to overtime payments therefore existed solely as a result of the CBA, and as such his state law overtime claim was preempted:

> Curtis's argument fails, however, in light of section 510(a)(2), which provides that the "requirements of this section do not apply to the payment of overtime compensation to an employee working pursuant to ... [a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514."
>
> Section 514 in turn states that "Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514.
>
> **By its terms, therefore, the default definition of overtime and overtime rates in section 510 does not apply to an employee who is subject to a qualifying CBA.** If Curtis's CBAs in this case meet the requirements of section 514, **Curtis's right to overtime "exists solely as a result of the CBA," and therefore is preempted under § 301**.

*Curtis*, 913 F.3d at 1153–1155 (emphasis added).

78.    There are three CBAs at issue in this action which trigger California Labor Code § 514 and preempt any claim under California Labor Code § 510.

79.    **The Master Labor Agreement.** The Southern California District Council of Laborers Union Master Laborers' Agreement (the "Master Labor Agreement") specifically provides for wages, overtime, hours of work, and working conditions. (Knowles Dec., Ex. A, Master Labor Agreement.) The Master Labor Agreement expressly states that the parties "intend to establish uniform rates of pay, hours of employment and working conditions." (*Id.* at 1.) The Master Labor Agreement sets

26

uniform rates of pay based on employee classification and provides that employees "shall receive wages based upon the minimum hourly wage rates specified in Article XIX of this Agreement calculated by the number of hours he was employed, less all legal deductions. Any other method of paying the employees, such as the use of piece work, bonus systems or lumping of the work, shall be deemed a violation of this Agreement." (*Id.* at 27.) Further, the Master Labor Agreement specifies the hours of work, stating that, "Eight (8) consecutive hours, exclusive of meal period, between 5:00 a.m. and 5:00 p.m., shall constitute a day's work. Forty (40) hours Monday 5:00 a.m. through Friday 5:00 p.m. shall constitute a week's work." (*Id.* at 34.) The Master Labor Agreement defines when employees are entitled to receive overtime and the applicable rates as "[t]ime and one-half, except hours worked over twelve (12) in a single workday, Sundays and Holidays, which are double time (2x)." (*Id.* at 38.) Further, the Master Labor Agreement provides a regular hourly rate of pay of not less than 30 percent more than the state minimum wage, as the lowest wage rate is $37.24 per hour. (*Id.* at 41– 45.)

80.    **The AGC Master Agreement**. The Southern California District Council of Laborers Union and the Associated General Contractors ("AGC") of America San Diego Chapter, Inc., AGC Master Laborers' Agreement (the "AGC Master Labor Agreement") also specifically provides for wages, overtime, hours of work, and working conditions. (Knowles Dec., Ex. B, AGC Master Labor Agreement.) Like the Master Labor Agreement, the AGC Master Labor Agreement expressly states that the parties "intend to establish uniform rates of pay, hours of employment and working conditions." (*Id.* at 1.) The AGC Master Labor Agreement also sets uniform rates of pay based on employee classification. (*Id.* at 32–33.) Further, the AGC Master Labor Agreement specifies the hours of work. (*Id.* at 34.) The AGC Master Labor Agreement defines when employees are entitled to receive overtime and the applicable rates. (*Id.* at 44.) Further, the AGC Master Labor Agreement provides a regular hourly rate of pay of not less than 30 percent more than the state minimum wage, expressly noting that it is "intended to and shall be deemed to satisfy all of the requirements of a valid Collective Bargaining Agreement as

27

referenced [in California law] It is the intent of this Agreement to provide employees with a regular hourly rate of pay not less than 30% more than the state minimum wage." (*Id.* at 34.)

81.    **The Local 89 Agreement**. Finally, Defendant entered into an agreement with Local Union Number 89, which incorporated the Master Labor Agreement "except as expressly provided otherwise." (Knowles Dec., Ex. C, Local 89 Agreement.) The Local 89 Agreement provides specific terms regarding adoption of the Master Labor Agreement recognition of the local union, a procedure for settling disputes and subcontracting. (*Id.*) The Local 89 Agreement, by incorporation of the Master Labor Agreement, provides for wages, overtime, hours of work, and working conditions.

82.    Therefore, because Plaintiff's right to overtime "exists solely as a result of the CBA[s]," his claim that Defendant violated overtime requirements by not paying him is preempted under Section 301. Thus, "[his] claim fails at step one of the preemption analysis" and the claims are preempted under Section 301. *Curtis*, 913 F.3d at 1155.

83.    Further, determining whether the overtime claim is meritorious would require a court to interpret the terms of the CBAs. For example, the AGC Master Labor Agreement provides differing rules for when employees are entitled to overtime pay and the applicable rate. Specifically, if "it is not reasonably possible to complete forty (40) hours of work, on either an eight (8) hours day shift or ten (10) hours day shift . . . Monday through Friday, then the balance of the forty (40) hours may be worked on Saturday at the straight time rate." (Knowles Dec., Ex. B at 33.) However, the AGC Master Labor Agreement also provides that "[a]ny time worked on Saturday, Sunday or holidays outside of the shift hours provided in the Agreement shall be paid for on the basis of the actual hours worked at the Laborers' overtime rate." (*Id.* at 32.) The AGC Master Labor Agreement further provides that "When employees are called out to work broken time or tide work on Saturdays, Sundays or Holidays, the minimum pay for such work shall be eight (8) hours at the applicable overtime rate." (*Id.*) Thus, a Court must interpret these terms before it can determine whether employees are entitled to overtime

pay and, if so, at what rate they are entitled to. *See Alaska Airlines, Inc.*, 898 F.3d at 921 (a state law claim is preempted if "litigating the state law claim nonetheless requires interpretation of a CBA.").

2. **Plaintiff's Fourth and Fifth Claims for Meal and Rest Periods— Which Allege Violations of California Labor Code §§ 226.7 and 512 —Also Create Federal Question Jurisdiction**

84.    Pursuant to California Labor Code §§ 512(e), if an employee is working in the construction industry, like Plaintiff, and is covered by a collective bargaining agreement that "expressly provides for wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate," then the meal period laws set forth in the statute do not apply to the employer. Cal. Lab. Code § 512(e). Instead, the CBA governs.

85.    Further, the section of Wage Order No. 16 which provides for rest periods does not apply to workers covered by a valid CBA, if that CBA "provides equivalent protection." Wage Order No. 16 § 11(e). The CBAs must include a "final and binding mechanism for resolving disputes regarding enforcement of the rest period provisions." *Id.*

86.    Finally, California Labor Code § 226.7 does not "apply to an employee who is exempt from meal or rest or recovery period requirements pursuant to other state laws, including, but not limited to, a statute or regulation, standard, or order of the Industrial Welfare Commission."

87.    Here, the CBAs meet the conditions for exemption from meal and rest period provisions of the Labor Code because they contain a binding grievance and arbitration procedure, as well as equivalent protections.

88.    **The Master Labor Agreement.** The Master Labor Agreement specifically

29

provides for wages, hours of work, working conditions of Plaintiff and other employees, and expressly provides for meal and rest periods for those employees. (Knowles Dec., Ex. A, Master Labor Agreement, Article XVI, "Holidays, Payment of Wages, ***Meal Periods, Rest Periods (Breaks),*** & Heat Illness Preventative Recovery Period") (emphasis added). Section C provides for premium wage rates for missed meal periods: "When employees work over five (5) hours without being provided with a one-half (1/2) hour meal period, they shall receive one-half (1/2) hour pay at the double time (2x) rate . . ." (*Id.* at 31.) Section D incorporates California law with regards to missed rest periods: "The parties to this Agreement recognize Industrial Wage Order 16 covering 'On Site Construction, Mining, Drilling and Logging Industries' [and intend to] satisfy all of the requirements for treatment as a qualified collective bargaining agreement." (*Id.*) The Master Labor Agreement also provides for final and binding arbitration of disputes pursuant to the grievance procedure, as outlined in Article VI and Appendix C of the Agreement which require that "all employee claims or disputes concerning violations of, or arising under Wage Order 16 (except as noted in the immediately preceding paragraph), the California Labor Code Sections identified in California Labor Code section 2699.5 as amended, all derivative claims under California Business and Professions Code section 17200, et seq., all associated penalties, and federal, state and local laws concerning wage-hour requirements, wage payment and meal or rest periods, including claims arising under the Fair Labor Standards Act (hereinafter "Statutory Dispute" or "Statutory Disputes") shall be subject to and must be processed by the employee, not the Local Union or Union, pursuant to the procedures set forth in this Appendix C as the sole and exclusive remedy." (*Id.* at 59.) Further, the Master Labor Agreement provides a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage. (*Id.*, at Ex. A.)

89.     **The Local 89 Agreement**. As noted above, the Local 89 Agreement incorporates the terms of the Master Labor Agreement and thereby contains the same terms regarding wages, hours of work, working conditions of Plaintiff and other

employees, and expressly provides for meal and rest periods for those employees.

90. **The AGC Master Labor Agreement.** The AGC Master Labor Agreement also provides for wages, hours of work, working conditions of Plaintiff and other employees, and expressly provides for meal and rest periods for those employees. (Knowles Dec., Ex. C, AGC Master Labor Agreement, Section 20 "Work Periods and Work Rules.") Section O sets out the requirements for meal periods and provides that "Employees shall not work more than five (5) consecutive hours without a one-half (1/2) hour meal period. When employees work over five (5) hours without being provided with a one-half hour meal period, they shall receive one-half hour pay at the double (2) time rate, in addition to their normal straight time shift period of eight (8) hours." (*Id.*) This section further provides that, "When an employee is required to work more than three (3) hours after his regular shift, he will be entitled to a one-half hour meal period at the end of the three (3) hours without loss of pay and an additional half hour each five (5) hours thereafter, without loss of pay. In the event an employee is required to work through an overtime meal period, then the employee shall receive pay for an additional one-half hour at the double (2) time rate. Meal periods may be staggered to meet job requirements" (*Id.*) Section P provides for terms regarding rest periods, which incorporates the requirements of California law regarding rest period and expressly provides that "[n]othing in this provision shall prevent an employer from staggering rest periods to avoid interruption in the flow of work and to maintain continuous operations, or from scheduling rest periods to coincide with breaks in the flow of work that occur in the course of the workday." (*Id.* at 34.) Further, the AGC Master Labor Agreement provides a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage. (*Id.*)

91. Given that these CBAs meet the conditions for exemption from meal period provisions of the Labor Code and contain a binding grievance and arbitration procedure, as well as rest period protections, Plaintiff's Fourth and Fifth claims are preempted by § 301 of the LMRA and fall within the Court's original federal question jurisdiction. *See*

*Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 751–52 (S.D. Cal. 2021) (denying plaintiff's motion for remand; "the Court sees no reason why *Curtis* should not be extended to preempt meal period claims made by an employee who falls within the exemption set forth in section 512(e), nor does Plaintiff present any such reason. At bottom, both sections 512 and 514 have nearly identical exemptions that make the rights they confer negotiable. … Accordingly, because Defendants have shown that the exemption in section 512(e) applies here, Plaintiff's meal period rights exist solely because of his CBA …, is preempted by § 301 of the LMRA and falls within the Court's original jurisdiction. Plaintiff's motion to remand is, therefore, also denied on this basis.") (internal citations omitted). *Accord Marquez v. Toll Glob. Forwarding*, 804 F. App'x 679, 680 (9th Cir. 2020) ("Marquez's meal period claims under Cal. Lab. Code § 512(a) are statutorily barred by § 512(e) … The CBAs governing Marquez's employment … meet the requirements of § 512(e). As a result, Marquez's right to meal periods 'exist[s] solely as a result of the [CBAs].'"); *Gray v. Marathon Petroleum Logistics Servs., LLC*, 2021 WL 129144, at *3–4 (C.D. Cal. Jan. 12, 2021) ("Plaintiff's employment was covered by a valid CBA. … Moreover, the CBA satisfies each of the Section 512(e) requirements for exemption from meal breaks. … Therefore, the Court concludes that all of the requirements of Section 512(e) are met, and, thus, Plaintiff's meal break claim is statutorily barred; "In addition, Plaintiff's meal break claim is preempted by the LMRA.").

### 3.    Plaintiff's Other Claims Are Subject to Supplemental Jurisdiction

92.    If the Court determines that any of Plaintiff's claims raise a federal question under Section 301 of the LMRA, the Court may exercise supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. section 1367(a), because the claims arise as part of the "same case and controversy."

93.    Pursuant to U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiff's remaining causes of action, which are substantially related to the claims for

unpaid overtime wages and failure to timely pay all wages owed. Considerations of convenience, judicial economy and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims in the Complaint, and Plaintiff "would ordinarily be expected to try [all of her claims] in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966).

94.    Plaintiff's first claim for violation of the Unfair Competition Law ("UCL") arises out of the "same case and controversy" as the Third through Fifth claims, because the alleged violation of the UCL is premised on the same alleged violations. Indeed, Plaintiff concedes that the UCL claim encompasses these claims by listing the same statutory violations as the "business practice which violates California law." (Ex. A, Compl. ¶ 57.) Of note, Plaintiff's UCL claim encompasses every cause of action, which further supports that all causes of action arise from the "same case or controversy." *See Nishimoto v. Federman-Bachrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990) ("[A] district court may exercise pendent jurisdiction over state law claims arising from a [common] nucleus of operative fact.").

95.    Plaintiff's second cause of action alleges that he and Class did not receive payment of all wages, including minimum wages. (Ex. A, Compl. ¶¶ 69-81.) His theory is that Defendant undercounted the number of hours he worked, and that he is therefore entitled to additional wages. The amount of time Plaintiff and the Class worked is part of the same set of facts as the meal and rest period claims and the overtime claim over which the Court has original jurisdiction. Additionally, as noted above, the CBAs contain specific terms which relate to the number of hours Plaintiff and other employees are expected to work.

96.    Plaintiff's sixth claim for failure to provide accurate wage statements in violation of California Labor Code § 226 is part of the "same case and controversy" as Plaintiff's Third through Fifth claims, because Plaintiff contends that Defendant's wage statements do not accurately list the applicable rates, hours, or amounts for overtime wages and do not accurately list the premium pay owed because of purported missed

meal and rest periods. (Ex. A, Compl. ¶¶ 98-99.) As discussed above, the Court has original jurisdiction over the California Labor Code §§ 510 and 512 claims, so the derivative claim for § 226 is well within the scope of supplemental jurisdiction.

97.    Plaintiff's eighth claim for sick pay is also premised on the same theory as his overtime claim—*i.e.*, that Defendant allegedly did not properly calculate his regular rate. (Ex. A, Compl. ¶ 112–117. ) Because this claim is premised on the same regular rate calculation as the overtime wage claim, this claim is also part of the "same case and controversy."

98.    Plaintiff's ninth claim for violations of California's quota law—which is only applicable to employees who work in distribution warehouses—is premised on the allegation that Defendant's alleged "quota system prevented Plaintiff and [the class] from taking breaks" and "did not allow them to take meal and rest periods." (*Id.* at ¶ 122–124.) Thus, this claim is directly tied with the Fourth and Fifth claims, over which this court has original jurisdiction.

## V.    VENUE

99.    Venue lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(d). This action originally was brought in San Diego County Superior Court of the State of California, which is located within the Southern District of California. 28 U.S.C. § 84(d). Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## VI.    NOTICE OF REMOVAL

100.    A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the San Diego County Superior Court of the State of California as required under 28 U.S.C. § 1446(d). The Notice of Removal is concurrently being served on all parties.

101.    In compliance with 28 U.S.C. section 1446(a), Defendant has attached a copy of the state court papers served herein. *See* Exhibits D, E (the Complaint &

34

1  Summons and Defendant's Answer, respectively). No other pleadings have been served
2  by the parties. (Sallomi Dec., ¶ 4.)

3  **VII.    PRAYER FOR REMOVAL**

4  102.    WHEREFORE, Defendant prays that this civil action be removed from the
5  Superior Court of the State of California, County of San Diego to the United States
6  District Court for the Southern District of California.

7
8  DATED: May 16, 2024                    Respectfully submitted,

9                                         SEYFARTH SHAW LLP

10
11                                        By:  */s/ Andrew M. Paley*
                                          Andrew M. Paley
12                                        Joshua A. Rodine
                                          Galen P. Sallomi
13
14                                        Attorneys for Defendant
                                          OHLA USA, Inc.
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION TO THE UNITED STATES DISTRICT COURT

311062776v.3